## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**PAMELA RASHARONQ ELLINGTON**
**On behalf of C.B.**                                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO.: 3:21-cv-435-KHJ-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff Pamela Ellington brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security Administration denying her son's claim for supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

### PROCEDURAL HISTORY

On February 24, 2020, Plaintiff filed an application for supplemental security income for her 12-year-old son C.B. alleging disability due to "metal plates in his leg and 2 in the right knee." ([10] at 193). The agency denied C.B.'s claim, and on December 1, 2020, an Administrative Law Judge ("ALJ") held a hearing. On March 3, 2021, the ALJ issued a decision finding that C.B. was not disabled. ([10] at 17-24). Plaintiff appealed the ALJ's decision to the Appeals Council. On March 11, 2021, the Appeals Council denied the request for review rendering the ALJ's decision the final decision of the Commissioner. ([10] at 14-16).

### ADMINISTRATIVE LAW JUDGE'S DECISION

In her March 3, 2021 decision, after determining that C.B. was an adolescent, the ALJ applied the three-step sequential evaluation process set forth in 20 CFR § 416.924a for determining disability for children and concluded that C.B. was not disabled. "For a child to be

disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is 'severe'; and (3) have an impairment that 'meets, medically equals, or functionally equals' the impairments listed in the disability regulations." *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012)(citing 20 C.F.R. § 416.924(a)-(d)).

In making this determination, an ALJ evaluates the "whole child" by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs. *See* Social Security Ruling 09-1p. If a child's impairment does not medically equal a listing, an ALJ will still perform a "functional equivalence" analysis pursuant to 20 C.F.R. § 416.924(a)-(d). *Richard ex rel. Z.N.F.,* 480 F. App'x at 776.

During the functional equivalence analysis, an ALJ compares how the child claimant functions compared to a child of the same age without any impairments in six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b). In order to functionally equal a listing, a child claimant's impairments must be of listing-level severity or result in "marked" limitations in two domains of functioning or "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(a).

The ALJ found that C.B. had not engaged in substantial gainful activity since the application date. ([10] at 18). The ALJ then found that C.B. had the following severe

impairments: "leg length inequality, nonossifying fibroma[1] status post-nonossifying femur excision and bone grafting, and type one complex regional pain syndrome of the right upper extremity." ([10] at 18). The ALJ then found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 04, Subpart P, Appendix 1. ([10] at 18-24). She then made a functional equivalence analysis and found that C.B. had a "marked" limitation in the domain of moving about and manipulating objects, but no limitation in all other domains. Accordingly, the ALJ found that C.B. did not have an impairment or combination of impairments that functionally equaled a listed impairment and determined that C.B. was not disabled. ([8] at 24).

**STANDARD**

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the

---

[1] Nonossifying fibromas are tumors that consist of fibrous tissue that are most commonly found in the long bones of the lower extremities. *Dorland's Illustrated Medical Dictionary* 672 (29th ed. 2000).

3

Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).

A court may not re-weigh the evidence, try the issues *de novo,* or substitute its judgment for the

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial

evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover,

"'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial

rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)

(quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

### *Upper Extremity*

Plaintiff argues that the ALJ failed to consider C.B.'s "use of his upper extremity" when

she found that C.B. did not have an impairment of combination of impairments that functionally

equals the severity of a listing. ([10] at 19-24). However, the ALJ thoroughly reviewed C.B.'s

medical records, including those relating to his right hand and wrist, and her decision is

supported by substantial evidence.

The ALJ noted that during an August 2019 rheumatology exam C.B. had a full range of

motion without tenderness or synovitis[2] in all of his joints. ([10] at 22). In September of 2019,

medical imaging of C.B.'s right hand was "normal." The ALJ found it significant that C.B.

indicated to his rheumatologist that he did not experience a significant increase in his pain when

he ran out of his medication. ([10] at 22).

---

[2] Inflammation of a synovium—a type of connective tissue in articulated joints like knees and elbows; it is usually painful, particularly on motion. *Dorland's Illustrated Medical Dictionary* 1773 (29th ed. 2000).

The ALJ noted that during a November 2019 emergency room visit, C.B. was noted as having a normal range of motion and strength and no significant, non-acute physical impairments. ([10] at 22). While imaging of C.B.'s hand from November of 2020 revealed "suspected juxta articular osteopenia," the ALJ noted that there were no acute fractures, no dislocation, and no bony erosive change. ([10] at 23). In January of 2021, C.B. had diffuse tenderness in his right wrist during an orthopedic surgery examination, but the ALJ found it significant that that the doctor gave him "no specific activity limitations." ([10] at 23; [11] at 23, 297). Notes from the same visit state that C.B. had no swelling, intact sensation, and a normal range of motion in his right hand and wrist. ([11] at 297). X-rays from January 2021 showed no definite bone abnormality. ([11] at 301).

The ALJ also reviewed the opinions of State agency pediatric consultants Dr. Tammy McGee and Dr. Eva Henderson and found that their opinions were persuasive. Dr. McGee and Dr. Henderson found that C.B. had "less than marked" limitation in moving about and manipulating objects and "no limitation" in any of the other domains. ([10] at 24, 74-80, 81-88).

Ultimately, the ALJ concluded:

[W]hile the claimant reported experiencing pain and decreased sensation in his right hand and wrist and occasionally had tenderness to palpation, and reduced grip strength in his right hand, he reported his pain improved with medication and frequently had normal range of motion, no tenderness or deformities, full strength and intact sensation in his right hand and wrist....This evidence supports the conclusion that although the claimant's ability to move about and manipulate objects was limited but that he did not have any significant limitations in the other functional areas.

([10] at 24). The ALJ sufficiently reviewed the evidence pertaining to C.B.'s use of his upper extremity and substantial evidence supports her decision.

_Health and Physical Well-Being_

Plaintiff argues that the ALJ erred in finding that C.B. has no limitation in the domain of health and physical well-being. In this domain, the Commissioner considers the cumulative physical effects of a claimant's impairments and their associated treatments or therapies on the claimant's functioning that were not considered in the moving about and manipulating objects domain. _See_ 20 C.F.R. § 416.926a(l). This includes the impact the claimant's impairments may have on his ability to perform activities independently or effectively, the medications or treatments and their impact on his ability to perform activities, and how a claimant's function is impacted during periods of worsening and the length of those periods of time. _See_ 20 C.F.R. §416.926a(l)(1-3).

In 2017, C.B. underwent surgery after being diagnosed with nonossifying fibromas. ([10] at 296). Hardware was inserted into his leg which was removed three years later. ([10] at 262). As considered by the ALJ, C.B.'s gait, strength, and range of motion improved after the hardware was inserted in his leg, and he was treated conservatively. ([10] at 21-22). The ALJ noted that C.B. recovered well from surgery, that his pain was well-controlled with medication, and that he frequently had a "normal range of motion, no tenderness to palpation, intact sensation, and full strength" in both his right leg and right hand and wrist. ([10] at 24).

Both Dr. McGee and Dr. Henderson, the pediatric consultants, found that C.B. had no limitation in the domain of health and physical well-being. ([10] at 77, 86). As previously mentioned, while Plaintiff complained of problems with his right hand and was diagnosed with paresthesia, examinations by doctors were largely normal. ([10] at 296; [11] at 183, 246, 275, 283). The ALJ's finding that C.B. experiences "no limitation" in this area is supported by substantial evidence.

*Attending and Completing Tasks*

Plaintiff next argues that the ALJ erred in finding that C.B. has no limitation in the domain of attending and completing tasks. The regulations explain that this domain considers how a claimant is able to focus and maintain his attention, how well he can begin, carry through, and finish an activity, as well as the pace at which a claimant is able to perform that activity. *See* 20 C.F.R. § 416.926a(h). Adolescents such as C.B. should be able to:

> pay attention to increasingly longer presentations and discussions, maintain [his] concentration while reading textbooks, and independently plan and complete long-range academic projects. [He] should also be able to organize [his] materials and to plan [his] time in order to complete school tasks and assignments. In anticipation of entering the workplace, [he] should be able to maintain [his] attention on a task for extended periods of time, and not be unduly distracted by [his] peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v).

Plaintiff points to no supporting documentation or other significant evidence that C.B. is at all limited in this domain. Instead, the record indicates that C.B. works on arts and crafts and does his own homework. ([10] at 184-86). His mother reported that C.B. is able to read books and both understand and carryout simple instructions. ([10] at 184). The ALJ found it significant that C.B. was able to pass seventh grade, was in regular classes, and did not have any disciplinary problems. ([10] at 21). The ALJ's finding that C.B. experiences no limitation in this domain is supported by substantial evidence.

*Ability to Care for Himself*

Plaintiff claims that the ALJ erred in finding that C.B. has no limitation in the "ability to care for yourself" domain. In this domain, the Commissioner considers how well a child claimant maintains a healthy emotional and physical state, including how he copes with stress and changes in his environment, and whether he takes care of his health, possessions, and living area.

*See* 20 C.F.R. § 416.926a(k). For an adolescent, the regulations state that a child should be increasingly independent in day-to-day activities. 20 C.F.R. § 416.926a(k)(2)(v).

C.B.'s mother reported that he was able to take care of his personal hygiene, study and do his own homework, take his own medication, keep out of trouble, obey rules, avoid accidents, and ask for help when needed. ([10] at 186). His mother also stated at the hearing before the ALJ that he does not have any discipline problems at school. ([10] at 42). The ALJ's finding that C.B. has "no limitation" in this domain is supported by substantial evidence.

*Subjective Complaints*

Plaintiff also argues that the ALJ failed to consider C.B.'s headaches in making her determination that he is not disabled. An ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In her opinion, the ALJ stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing whether the claimant's impairment or combination of impairments functional equals the severity of the listings." ([10] at 18). The ALJ specifically considered C.B.'s headaches, but found that the medical evidence indicated they "improved and were stable with medication." ([10] at 18). Substantial evidence supports this finding.

On April 21, 2017, C.B. reported no headaches in the last 3-4 months with his medication. ([11] at 74). Notes from a March 14, 2019, appointment state that his "headaches are better with preventative medication" and that he did not experience aura. ([10] at 303). On September 17, 2019, C.B. visited pediatric neurology where the doctor noted that his "headaches are stable with preventative medication." ([10] at 295). He also noted that C.B.'s chronic pain

was "better." ([10] at 295). At an August 2019 appointment, C.B. reported "no aura, nausea or vomiting" with his headaches and that they improved with medication. ([10] at 296).

On November 23, 2020, C.B. again reported "improvement with Topamax with frontal headaches." ([11] at 283). During a visit at the Chronic Pain Clinic in February of 2021, C.B. did not complain of headaches at all. ([11] at 298). Further, as discussed above, the ALJ found it significant that C.B. was able to function at a level that allowed him to pass seventh grade in regular classes. ([10] at 21).

The Court recognizes that there is some evidence of record which supports Plaintiff's claims. This Court, however, does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner. *Selders,* 914 F.2d at 617. The ALJ found that the evidence of record was more persuasive than Plaintiff's subjective complaints, a determination within the purview of the ALJ. *See Villa*, 895 F.2d at 1024. The ALJ gave sufficient reasons for her findings, and the ALJ's decision is supported by substantial evidence.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the

matter to this Court with instructions.  Failure to timely file written objections to proposed

findings, conclusions, and recommendations contained in this report will bar an aggrieved party,

except on the grounds of plain error, from attacking on appeal unobjected to proposed factual

findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

      This 2nd day of August, 2022.

                                  s/ Michael T. Parker
                                  United States Magistrate Judge